**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2328. ZHENG v. NEW GRAND BUFFET, INC. et al .

A12A2329. NEW GRAND BUFFET, INC. et al . v. ZHENG

BARNES, Presiding Judge.

We granted this discretionary appeal from a decision of the Appellate Division of the State Board of Workers Compensation affirmed by operation of law pursuant to OCGA §§ 34-9-105 (b), (d). Mei Yu Zheng appeals that portion of the decision holding that Zheng's employer was not liable for payment of some of her medical bills. The employer, New Grand Buffet, Inc., and its insurer, Amguard Insurance Company (collectively "employer"), cross-appeal that portion of the award directing the recommencement of Zheng's temporary total disability benefits. We affirm the Board's conclusion that the employer is not liable for payment of certain medical bills

and not subject to a 15 percent late payment penalty, and we dismiss the employer's appeal for lack of jurisdiction.

On appeal, we affirm factual findings by the Board that are supported by any evidence, but review de novo the application of law to undisputed facts. *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003).

The parties do not dispute that Zheng sustained a compensable injury on May 27, 2010, and began receiving medical care and income benefits. Her employer suspended Zheng's income benefits on October 1, 2010, asserting that Zheng underwent a change in condition for the better based on a regular duty work release from her authorized treating physician. Zheng disputed that she underwent a change in condition for the better and sought the reinstatement of her income benefits, as well as payment of certain medical expenses, permission to change her authorized treating physician, a late penalty, and an assessment of attorney fees.

After a hearing, the administrative law judge ("ALJ") found that the employer's suspension of benefits "was not improper" in view of an August 24, 2010 statement from the treating physician that he anticipated that Zheng would be able to return to work on August 31, 2010. The work release was prospective, however, depending on test results and an evaluation, and Zheng did not return to see Dr. Armstrong on

August 31, 2010 as scheduled. Instead, Zheng elected to see another physician of her own choosing. After reviewing evidence from the physicians who saw Zheng before and after Dr. Armstrong, the ALJ reinstated Zheng's income benefits as of October 1, 2010, concluding that the employer did not establish by a preponderance of the evidence that Zheng had undergone a change in condition for the better that allowed her to return to work without restrictions.

The ALJ also found that the employer had a panel of physicians and that the employer's manager had explained the panel's function to Zheng when she had been rehired two months before she was injured. Zheng had received treatment from the three physicians on the panel: Dr. Chang, Dr. Wu, and Dr. Armstrong, but instead of returning to Dr. Armstrong, she changed physicians on her own without Board approval. Because the employer had been providing appropriate medical treatment, it did not lose control of Zheng's treatment and was not responsible for paying the new physicians' expenses. The ALJ denied Zheng's request that one of her new physicians be designated as her authorized treating physician, finding that the employer should first have the opportunity to offer Zheng treatment by another physician of the employer's choice. Finally, finding that the case was closely

3

contested on reasonable grounds, the ALJ denied the employee's request for attorney fees and penalties.

Both sides appealed the ALJ's decision to the Appellate Division of the State Board of Workers Compensation, which adopted the ALJ's findings of fact and conclusions of law. Both parties appealed this decision to the superior court, which conducted a hearing. The superior court did not issue an opinion within 20 days of the hearing, however, and thus the Board decision was affirmed by operation of law. OCGA §§ 34-9-105 (b), (d). This court granted Zheng's application for discretionary appeal, and the employer cross-appealed.

Case Number A12A2328

Zheng contends that the Board erred in affirming the ALJ's finding that (1) the employer had a panel of physicians, (2) that the employer had not lost control of Zheng's medical treatment, (3) that the employer is not responsible for payment of treatment by non-panel doctors, (4) that Zheng needed Board approval to change doctors, and (5) that Dr. Armstrong is the authorized treating physician.

Zheng's change of physicians from Dr. Armstrong, whom she last saw on August 24, 2010, to non-panel physicians, the first of whom she saw on August 3, 2010, underlies much of the dispute in this case. Zheng's employer initially took her

4

to see Dr. Chang, who obtained an x-ray and referred Zheng to Dr. Wu, a chiropractor. Dr. Wu referred Zheng to Dr. Armstrong, an orthopedic surgeon.

Armstrong saw Zheng first on June 1, 2010, then again on June 28, 2010, August 10, 2010, and August 24, 2010. At the August 24, 2010 visit, Dr. Armstrong noted that Zheng had completed her physical therapy and that while her MRI showed some abnormalities, he thought they were pre-existing rather than caused by her work-related injury. He also thought Zheng's complaints were disproportionate to her clinical findings and, in contrast to previous visits, could no longer clearly identify a direct relationship between her pathology and the "work circumstances at the time of onset" of her complaints. Dr. Armstrong planned to obtain EMGs and nerve conduction studies and anticipated releasing Zheng to return to work on August 31, 2010, depending on the test results and his examination, noting that at that time she could consider a second opinion or further advice from another attending physician.

Zheng did not return to Dr. Armstrong for further treatment. On July 30, 2010 her attorney faxed a letter to the insurance adjuster seeking a copy of the employer's panel of physicians, and on August 24, 2010 he faxed another letter to the adjuster advising him that Zheng had chosen Dr. Delgado as her authorized treating physician. Zheng first saw Dr. Delgado on August 3, 2010, and he referred her for a surgical

5

consult and pain management. She was still seeing Dr. Delgado and the doctors he had referred her to as of the hearing on March 30, 2011.

The employer's manager testified that she had posted a panel of approved physicians at the restaurant and had explained it to Zheng when she started working. In contrast, Zheng testified there was no panel of physicians posted at the restaurant and no one had explained it to her. At the end of the hearing, the ALJ said she would leave the record open for ten days to allow Zheng's attorney to "make inquiry about the panel," and then the record would close. The ALJ continued, stating that if Zheng's counsel had something "to say about that" he needed to set up a conference call with opposing counsel and the ALJ to discuss it. Zheng did not submit anything to the ALJ regarding the panel within the next ten days, as the ALJ noted in her award, issued May 25, 2011.

In its post-hearing brief, the employer argued that Zheng was not entitled to change physicians on her own accord because it had been providing her with appropriate medical treatment, and therefore it should not be required to pay for the treatment from the unauthorized physicians. Zheng argued in her post-hearing brief that she had requested a copy of the panel on July 30, 2010, and included as an exhibit a letter from her lawyer to the insurance adjuster asking for it. She also argued

6

that, acting on the insurance adjustor's representation that no panel of physicians existed, she elected Dr. Delgado as her treating physician and notified the adjuster of her election by letter on August 24, 2010. Zheng argued that the employer should be estopped from restricting her treatment to the panel doctors, or at least be required to pay the outstanding medical bills from the doctors she had been treating with for seven months, based on its representation that no panel existed. The employer replied that whether or not a panel existed was irrelevant because the employer had been providing medical care at the time Zheng changed doctors and she was required to petition the Board for approval.

The ALJ did not directly address Zheng's argument that she had acted upon the claims adjuster's representation that no panel existed and thus the employer should be estopped from claiming its existence to avoid paying outstanding medical bills. Instead, the ALJ found that a panel existed, that the manager had explained it to Zheng, that Zheng had seen three of the physicians on the panel (Drs. Chang, Wu, and Armstrong), and that Zheng had never asked her employer if she could see a different doctor. The ALJ further held that, because the employer had been providing Zheng with appropriate medical treatment, Zheng could not unilaterally change physicians without board approval.

7

OCGA § 34-9-200 (a) requires an employer to furnish the injured employee with medical treatment which "shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment," and OCGA § 34-9-201 (b) (1) allows the employer to satisfy that requirement by posting a panel of six physicians from which an employee may accept services. An employee may make one change from a panel physician to another panel physician, and a panel physician may refer the employee to a non-panel physician, although that non-panel physician may not make further non-panel referrals. OCGA § 34-9-201 (b) (1). An employee may also ask the Board to order a change of physician or treatment, and if granted the employer is liable for those expenses. OCGA §§ 34-9-200 (b); 34-9-201 (e).

"If the employer fails to provide any of the procedures for selection of physicians as set forth in subsection (c) [of OCGA § 34-9-201], an employee may select any physician to render service at the expense of the employer." OCGA § 34-9-201 (f). Further, if an employer terminates the employee's medical benefits, the employee is entitled to see any doctor she chooses and make the employer pay for it if she can prove she was still injured at that time as a result of the accident. *Boaz v. K-Mart Corp.*, 254 Ga. 707, 710 (1) (334 SE2d 167) (1985).

8

We find no error in the ALJ's findings and conclusions. There was evidence that there was a valid panel of physicians posted at the time of Zheng's injury and that the function of this panel was appropriately explained to Zheng by the employer in compliance with OCGA § 34-9-201 (c). Moreover, the employer in this case did not terminate Zheng's medical benefits, and Zheng was being treated by Dr. Armstrong when she first saw Dr. Delgado on August 3, 2010. In fact, she saw Dr. Armstrong two more times before notifying her employer that she had chosen Dr. Delgado as her treating physician. Under these circumstances, if Zheng was unhappy with the treating physician her options were to ask her employer to change her treating physician or to petition the Board for approval to change, but she was not entitled to change physicians unilaterally and require her employer to pay for it. Accordingly, Zheng's enumerations of error one through five have no merit.

2. Zheng also contends the ALJ erred in concluding that the employer was not liable for a 15 percent late payment penalty under OCGA § 34-9-221 (e). Based on our preceding discussion and the following discussion about the income benefits suspension, Zheng's argument in this regard is unavailing.

3. The employer contends that Appellate Division erred in affirming the ALJ's finding that the employer failed to prove that Zheng had undergone a change in condition for the better that justified its termination of benefits and ordering it to restart them as of October 1, 2010.

Before considering that issue, however, we must consider our jurisdiction to review this claim based on the timing of the employer's notice of appeal from the Appellate Division to the superior court. The Workers Compensation Act contains no provision allowing for a cross-appeal of the Board's final decision to the superior court. OCGA § 34-9-103 (a) grants an appellee the right to institute a cross-appeal from the ALJ award to the Appellate Division by filing a notice of appeal within 30 days of the award (ten days after the appellant must file). OCGA § 5-6-38 (a) likewise grants an appellee the right to institute a cross-appeal from the superior court to this court by filing notice "within 15 days from service of the notice of appeal by the appellant." But OCGA § 34-9-105 (b) provides only that either party may appeal the Board's decision to the superior court within 20 days of the Board's final order, "but not thereafter." Thus, by its plain language, OCGA § 34-9-105 (b) does not give an

appellee additional time to file a cross-appeal. It provides only that either party may file an appeal within 20 days of the Appellate Division's order.

The employer argues that the cross-appeal provisions of OCGA § 5-6-38 should apply in this case because the superior court was acting as an appellate court. But the statute refers explicitly to the Court of Appeals and the Georgia Supreme Court, not to any court acting in an appellate capacity. The Appellate Division also acts in an appellate capacity, and the statute specifically allows an appellee 30 days from the ALJ award to file a notice of cross-appeal, while the appellant has 20 days. Further,

> [t]he State Board of [Workers] Compensation is not a court, but is an administrative body with only those powers and duties given it by statute. Therefore, . . . provisions of the Civil Practice Act . . . are not applicable to [workers] compensation claims unless made so by statute pertaining specifically to [workers] compensation claims.

(Citations omitted.) *Nat. Biscuit Co. v. Martin*, 225 Ga. 198, 199-200 (167 SE2d 140) (1969). See also *McClendon v. Advertising That Works*, 292 Ga. App. 677, 680 (2) (665 SE2d 370) (2008).

The employer also argues that it "would make no sense whatsoever under the law" for the parties to have a right of cross-appeal from the ALJ to the Appellate

11

Division and from the superior court to the Court of Appeals, but not in between from the Appellate Division to the superior court. But limiting to 20 days the time within which both parties must file a notice of appeal to the superior court is consonant with other strict time limitations placed upon such appeals. For example, under OCGA § 34-9-105 (b), the superior court must hold a hearing within 60 days and issue an order within 20 days of the hearing to avoid the affirmance of the award by operation of law.

If a party to a workers compensation award does not seek review of an issue by the superior court within the time prescribed, the award becomes final as to that issue, and the party is not entitled to review of that issue by this court. *Bryant v. J.C. Distributors*, 108 Ga. App. 401, 405-406 (2) (133 SE2d 109) (1963). See also *Dawson v. Atlanta Processing Co.*, 190 Ga. App. 293, 294 (378 SE2d 695) (1989). Because the employer did not file its notice of appeal to the superior court within 20 days of the Appellate Division award, as required by OCGA § 34-9-105 (b), we do not have jurisdiction to consider its claims on appeal. Accordingly, the appeal in A12A2329 is dismissed.

*Judgment in Case Number A12A2328 affirmed. Appeal in Case Number A12A2329 dismissed. McFadden and McMillian, JJ., concur.*