**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2014**

# In the Court of Appeals of Georgia

A14A0895. LANE v. WILLIAMS PLANT SERVICES et al.

BOGGS, Judge.

In this discretionary appeal, Kenneth Lane, Sr. appeals from the superior court order affirming the decision of the Appellate Division of the State Board of Worker's Compensation ("Appellate Division"), which had affirmed the decision of an administrative law judge ("ALJ"). Lane contends that the superior court erred by (1) concluding that no legal error resulted from the Appellate Division's determination that his request to reinstate income benefits was barred by the two-year statute of limitation and (2) in concluding that the Appellate Division did not err by finding that his employer was not liable for additional medical expenses. For the reasons explained below, we affirm in part, reverse in part, and remand this case for additional findings.

In the absence of legal error, the factual findings of the Board must be affirmed by the superior court and by the Court of Appeals when supported by any evidence in the administrative record. Erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, however, are subject to the de novo standard of review.

(Citation and punctuation omitted.) *MARTA v. Thompson*, 326 Ga. App. 631 (757 SE2d 228) (2014). "Where statutory provisions are ambiguous, courts should give great weight to the interpretation adopted by the administrative agency charged with enforcing the statute. [Cit.]" *Cook v. Glover*, 295 Ga. 495, 500 (761 SE2d 267) (2014). Courts should defer to an "agency interpretation so long as it comports with legislative intent and is reasonable." *Cook v. Glover*, 295 Ga. 495, 500 (761 SE2d 267) (2014). This deference is provided to the Workers' Compensation Board's construction of workers' compensation statutes. See *MARTA v. Reid*, Ga. n. 6 (Case No. S13G1812, decided September 22, 2014).

So viewed, the record shows that Lane received a workers' compensation award in 2008 for a low back injury. In March 2010, Lane's employer suspended his income benefits and mailed its last payment of benefits (through March 10, 2010) to

him before March 9, 2010.[1] On March 9, 2010, Lane moved for an "interlocutory recommencement of income benefits" in which he contended that "benefits were improperly suspended."[2] The ALJ denied this motion based upon its determination

> that there is not enough evidence on which to order a recommencement of income benefits. The only evidence presented was an old medical record that had been attached to a WC-104 filed the year before. . . . As a second reason for denying the request, I determine that this issue would be best handled by evidentiary hearing."

Despite this suggestion, Lane took no further action for almost two years. Then, on March 13, 2012, he filed a WC-14 notice of claim requesting a hearing on his request for reinstatement of income benefits from "July 1, 2010 and continuing." Following a hearing, the ALJ issued an order concluding that Lane's request for reinstatement of income benefits was barred by the statute of limitation, finding as follows:

OCGA § 34-9-104 (b) states:

> [A]ny party may apply under this Code section for another decision because of a change in condition ending, decreasing,

---

[1] These facts were established by a stipulation of the parties.

[2] The record before us does not include the March 9, 2010 motion.

3

increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision, provided . . . that at the time of application not more than two years have elapsed since the date the last payment of income benefits pursuant to Code Section 34-9-261 or 34-9-262 was actually made under this chapter.

I find that the Employee must have received the March 1, 2010 WC-2 not long after that date, given that his motion to reinstate income benefits was filed on March 9, 2010, the day before his income benefits were to end. As found before, though benefits were suspended effective March 10, the last payment was mailed sometime before March 9. Under OCGA § 34-9-221 (b), the date of mailing is considered the date of payment, if mailed from outside of Georgia. Based on this, I find that the date of the last payment of income benefits under this chapter was "actually made" was therefore sometime before March 9. At any rate, OCGA § 34-9-104 (b) could not have meant for the limitations statute to begin running from the date the last payment of income benefits was actually *received*, or the Legislature would have said so, rather than saying "actually *made*." . . .

Be that as it may, the Employee's request for a hearing reinstating income benefits was not made until March 13, 2012. Even considering the official suspension date of March 10, 2010 as being the date the payment was "actually made," the WC-14 was filed more than two years after that date. But considering that the date payment was actually made

4

was before that date, that puts the Employee's hearing request even further, however slightly further, outside the limitations period.

With regard to Lane's request for payment of certain medical expenses, the ALJ concluded that because Lane was discharged from treatment by his authorized physicians on April 13, 2010, he was entitled to seek treatment from a doctor of his own choosing and obtain reimbursement from his employer.

Lane appealed from the ALJ's adverse ruling on income benefits, and his employer filed a cross-appeal from the ALJ's determination that it was liable for Lane's medical expenses. The Appellate Division "agree[d] with the [ALJ] that the date of mailing is the date payment was actually made. See OCGA § 34-9-221 (b)." It disagreed with the ALJ's ruling on the employer's liability for medical expenses, finding:

> The preponderance of competent and credible evidence indicates that the Employer/Insurer did not terminate the Employee's medical treatment in this case, nor did the authorized physicians terminate care to the Employee. Under these circumstances, the Employee is not entitled to change physicians unilaterally and require the Employer to be responsible for the medical expenses.

Lane filed an appeal in superior court, and that court affirmed the Appellate Division's conclusion regarding the statute of limitation, stating:

> The agency charged with administering the Workers Compensation Act has determined that a payment of income benefits is deemed to have been made when an employer or insurer issues a check and mails it, rather than when an employee received it. The Court finds no basis for rejecting that interpretation of the Act. Construing "payment" to occur when the party obligated to make it takes the last step it is required to do to make it is not inconsistent with the language of the statute. There are many statutes that required mailing to be done in a manner which generates proof of the date of receipt. If the General Assembly had intended the above-statute to require proof of receipt to trigger the running of the statute, it could have so provided.

The superior court also affirmed the Appellate Division's finding that the employer was not liable for Lane's medical expenses.

1. Lane contends that the determination that his claim for additional income benefits was time-barred is contrary to law. We disagree.

(a) As noted above, this court must give deference to an agency's interpretation of a statute "so long as it comports with legislative intent and is reasonable." *Cook*, supra. We need not decide whether the so-called mailbox rule embodied in OCGA §

6

34-9-221 (b)[3] should be applied to the limitation period in OCGA § 34-9-104 (b), because the Appellate Division's determination that a payment is "actually made" when it is mailed to the recipient is reasonable and entitled to deference.

(b) Lane asserts that our decision in *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003), mandates the conclusion that a payment is "actually made" under OCGA § 34-9-104 (b) when it is received by the employee. We disagree. In *Trent Tube*, neither the ALJ, the Appellate Division, nor this court addressed when a *mailed* payment is "actually made." While this court stated that the statute of limitation under OCGA § 34-9-104 (b) "does not begin to run until an employee receives his last payment," 261 Ga. App. at 527 (1), we do not know the form or method by which the employee received his payment in *Trent Tube*. We note that

---

[3] This Code section provides in relevant part: "[I]ncome benefits shall be due and payable in weekly installments. . . . Such weekly payments shall be considered to be paid when due when mailed from within the State of Georgia to the address specified by the employee or to the address of record according to the board. Such weekly payments shall be considered to be paid when due when mailed from outside the State of Georgia no later than three days prior to the due date to the address specified by the employee or the address of record according to the board. Such weekly payments shall be considered to be paid when due at the time they are made by electronic funds transfer to an account specified by the employee." Other portions of OCGA § 34-9-221 provide for penalties when income benefits are not paid when due. See, e. g., OCGA § 34-9-221 (e).

7

OCGA § 34-9-221 (a) provides that "[p]ayments shall be made in cash, negotiable instrument, or, upon agreement of the parties, by electronic funds transfer."

Additionally, the issue before us in *Trent Tube* was whether the statute could be interpreted to run from "the date on which [the employee] was no longer entitled to income benefits." Id. at 526. In rejecting that argument, we stated, "The statute of limitation does not begin to run until an employee receives his last payment . . . whether he is later determined to be entitled to [it] or not. . . . Here, the last payment was indisputably "actually made" to [the employee] . . . on [a date certain] less than two years before he filed his change in condition claim." Id. at 527-528 (1).

While OCGA § 34-9-104 (b) could be reasonably interpreted to mean that a mailed payment is "actually made" when it is received by the employee, an equally reasonable interpretation is that such a payment is "actually made" when it is placed in the mail. Now that the Board has interpreted the phrase "actually made" in OCGA § 34-9-104 (b) in the context of a *mailed* payment, we must defer to its reasonable interpretation. We therefore disapprove of any language in *Trent Tube* that can be construed as holding that a mailed payment is "actually made" when it is received by the employee.

8

(c) We cannot consider Lane's alternative argument that the motion he filed on March 9, 2010 should be construed as a timely application under OCGA § 34-9-104 (b), because Lane does not provide a record citation for it in his brief, the Board's index to its record does not list this motion, and our review of the record did not reveal it. See *Waters v. PCC Airfoils*, 328 Ga. App. 557, 563 ( SE2d ) (2014). "An appellant has the burden of providing us with a sufficient record to enable us to review the enumerations of error raised." (Citation omitted.) *Austell Healthcare v. Scott*, 308 Ga. App. 393, 395 (1) (707 SE2d 599) (2011).

2. In his remaining enumeration of error, Lane asserts that the finding that his employer is not liable for additional medical expenses is contrary to law.

> OCGA § 34-9-200 (a) requires an employer to furnish the injured employee with medical treatment which "shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment," and OCGA § 34-9-201 (b) (1) allows the employer to satisfy that requirement by posting a panel of six physicians from which an employee may accept services. An employee may make one change from a panel physician to another panel physician, and a panel physician may refer the employee to a nonpanel physician, although that nonpanel physician may not make further nonpanel referrals. OCGA § 34-9-201 (b) (1). An employee may also ask the Board to order a change of physician or treatment, and if granted the

9

employer is liable for those expenses. OCGA §§ 34-9-200 (b); 34-9-201 (e).

> If the employer fails to provide any of the procedures for selection of physicians as set forth in subsection (c) of OCGA § 34-9-201, an employee may select any physician to render service at the expense of the employer." OCGA § 34-9-201 (f). Further, if an employer terminates the employee's medical benefits, the employee is entitled to see any doctor she chooses and make the employer pay for it if she can prove she was still injured at that time as a result of the accident.

(Citation and punctuation omitted.) *Zheng v. New Grand Buffet*, 321 Ga. App. 308, 311 (1) (740 SE2d 302) (2013). "If an employer-approved physician releases an employee back into the work force as cured, the employer has not adequately met its duty of providing treatment to the employee if the employee is able to prove that his subsequent medical problems were related to his work-related injury." *Bel Arbor Nursing Home v. Johnson*, 192 Ga. App. 454 (385 SE2d 315) (1989).

Here, the record shows that Lane's authorized treating physicians were Dr. Heiges and Dr. Kenerly. On November 25, 2009, Dr. Heiges prescribed physical therapy for Lane and his notes state that he would "see him back for recheck at the completion of his physical therapy course." On January 27, 2010, Dr. Heiges completed a questionnaire for the employer's attorney that stated, I would anticipate

10

[maximum medical improvement] at next follow-up visit after conclusion of [physical therapy]." The ALJ noted in its order "that Dr. Heiges discharged the Employee on February 24, 2010." While a list of exhibits references a "2/24/10 Report of Dr. Heiges," a copy of this medical record does not appear in the record before us, and it was not mentioned in the Appellate Division's written decision.

On March 10, 2010, Dr. Kenerly stated that he agreed with the opinions stated by Dr. Heiges in the January 27, 2010 questionnaire. On April 13, 2010, Dr. Kenerly examined Lane and noted that Lane's last physical therapy visit was March 11, 2010. Dr. Kenerly informed Lane that in relation to his work injury, "he has had proper treatment and time to heal. In reference to his injury, I feel he can return to work without restrictions. He is at [maximum medical improvement]. . . . Weight loss and proper exercise program could help with his chronic low back pain." Dr. Kenerly also noted that he had "reviewed and agree[s] with Dr. Heiges' notes and his work status which stated 2/24/10 the patient is released to full work duty."

Lane testified in the hearing that Dr. Kenerly told him that "he had done all he could do for me. . . . He told me I could either learn to live with the pain or find

another line of work." Lane also testified that before his last appointment with Dr. Kenerly, Dr. Heiges released him to return to work with no restrictions.[4]

Lane admitted that after his April 2010 appointment with Dr. Kenerly, he never attempted to see Dr. Kenerly or Dr. Heiges again. He also testified that he made no attempt to return to work "on account of [his] back." In July of 2010, he sought treatment with another doctor recommended to him by his attorney. While the record contains testimony that Lane's workers' compensation benefits ended in March 2010, a copy of the WC-2 form dated March 1, 2010 that purportedly terminated Lane's benefits was never filed below.

The Appellate Division disagreed with the ALJ's conclusion that the authorized physicians had terminated care to Lane, but it relied upon only the following evidence in support of this conclusion:

---

[4] This testimony was admissible to explain Lane's conduct in seeking care from another physician. See *Liberty Mut. Ins. Co. v. Carnley*, 135 Ga. App. 599, 600 (1) (218 SE2d 307) (1975), disapproved on other grounds by, *Dugger v. North Brothers Co.*, 172 Ga. App. 622, 625 (3) (323 SE2d 907) (1984); *Clayton County Bd. of Ed. v. Hooper*, 128 Ga. App. 817, 819 (3) (198 SE2d 373) (1973). This conclusion is based upon the law of evidence as it existed before enactment of the new Georgia Evidence Code. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.")«**Hearing and decision of ALJ took place before 2013; V1. 179; V3. 1079**»

12

> The evidence reflects that upon the Employee's last visit to authorized physician Dr. Bradley Heiges, November 25, 2009, Dr. Heiges recommended the Employee return to him for follow-up care following the completion of his physical therapy. Dr. Hegies again offered the Employee follow-up care following the completion of his physical therapy. Dr. Heiges again offered the employee follow-up care following completion of physical therapy on January 27, 2011.

Because the evidence relied upon by the Appellate Division is incomplete, misstates that physical therapy was completed on January 27, 2011 as opposed to January 27, 2010, and the evidence shows that Lane sought treatment from a third physician after his authorized physicians released him to work without restrictions in April 2010, we must vacate the portion of the superior court's decision affirming the Appellate Division's denial of Lane's request for payment of unauthorized medical expenses. See *Boaz v. K-Mart Corp.*, 254 Ga. 707-710 (1) (334 SE2d 167) (1985) (affirming decisions of ALJ and Board concluding employer was liable for medical treatment after authorized physician discharged employee as a patient and authorized a return to work); *Vulcan Materials Co. v. Pritchett*, 227 Ga. App. 530, 530-532 (2) (489 SE2d 558) (1997) (employer liable for medical treatment after employer unilaterally suspended payments when authorized physician released employee to return to work with no restrictions even though physician noted in medical record that "he would see

13

[employee] again 'if he has any change in symptoms'"); *Ga. Power Co. v. Brasill*, 171 Ga. App. 569, 569-570 (1) (320 SE2d 573) (1984) (affirming superior court's conclusion that ALJ erred in disallowing past medical benefits where the authorized physician "stated that in his opinion the most recent symptoms were the result not of the [work] injury but of an underlying chronic condition"). Compare *Zheng*, supra, 321 Ga. App. at 309-312 (1) (affirming conclusion of ALJ and Board that employer was not liable for medical benefits when authorized physician issued prospective work release dependent upon test results and future evaluation and employee failed to return to authorized physician for scheduled appointment)

The record also shows, however, that neither the ALJ nor the Appellate Division addressed whether Lane's unauthorized medical treatment was related to his work injury. See *Bel Arbor Nursing Home*, supra, 192 Ga. App. at 454. We must therefore remand this case for a determination of that issue and further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Andrews, P. J., Barnes, P. J., Doyle, P. J., Miller, Dillard, McFadden, Ray, Branch and McMillian, JJ., concur. Phipps, C. J., and Ellington, P. J., concur in judgment only.*