**FIFTH DIVISION**
**RICKMAN, C. J.,**
**McFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 19, 2021**

# In the Court of Appeals of Georgia

A21A0867. SUNBELT PLASTIC EXTRUSIONS, INC. et al. v. PAGUIA.

McFADDEN, Presiding Judge.

The primary issue in this workers' compensation case is whether Sunbelt Plastic Extrusions, Inc. and its insurer (collectively, "Sunbelt") proved their statute-of-limitation defense to Julie Paguia's claim for a designation that her work-related injury is catastrophic. An administrative law judge with the State Board of Workers' Compensation and the appellate division of the board ruled that it did not. The superior court affirmed. We granted Sunbelt's application for discretionary appeal and now hold that some evidence supports the board's factual finding. We also find that evidence supports the designation of Paguia's work-related injury as catastrophic. So we affirm.

1. *Facts and procedural posture.*

When we review an award of the State Board of Workers' Compensation, we construe the evidence

> in a light most favorable to the party prevailing before the board; every presumption in favor of validity of the award should be indulged in by the reviewing court; neither the superior court nor this court has any authority to substitute itself as a factfinding body in lieu of the board; and weight and credit to be given witness testimony and conflicts in evidence are for the board's exclusive determination.

*Publishers Circulation Fulfillment v. Bailey*, 215 Ga. App. 136, 137 (449 SE2d 645) (1994) (citation omitted).

So viewed, the evidence shows that on March 31, 2009, Paguia injured her left hand in the course and scope of her employment with Sunbelt and sought workers' compensation benefits. She was entitled to 400 weeks of temporary total disability benefits, through November 29, 2016, and Sunbelt began paying those benefits.

On November 20, 2018, Paguia filed a form with the State Board of Workers' Compensation requesting that her injury be deemed catastrophic, a designation that would entitle her to continued payments. See OCGA § 34-9-261. Sunbelt countered that Paguia's request was barred by the two-year statute of limitation contained in

2

OCGA § 34-9-104 (b). The administrative law judge conducted a hearing, rejected Sunbelt's statute-of-limitation defense, and found that Paguia's injury is catastrophic. The appellate division adopted the administrative law judge's findings of fact, conclusions of law, and award, and made additional findings of fact and conclusions of law on the statute-of-limitation issue. The superior court affirmed and we granted Sunbelt's application for discretionary appeal.

2. *Statute-of-limitation defense*.

Sunbelt argues that the administrative law judge and the appellate division erred by rejecting its statute-of-limitation defense. We disagree.

OCGA § 34-9-104 (b) allows a claimant to seek additional workers' compensation benefits because of a change in condition (which Paguia sought here, see *Williams v. Conagra Poultry of Athens*, 295 Ga. App. 744, 746 (673 SE2d 105) (2009)), provided that "not more than two years have elapsed since the date the last payment of income benefits . . . was actually made[.]" "Thus, once an employer ends the payment of [temporary total disability] benefits to an employee, that employee must file a claim for any additional . . . benefits within two years of that cessation date; otherwise, the claim is time barred." *Roseburg Forest Products Co. v. Barnes*, 299 Ga. 167, 169 (1) (787 SE2d 232) (2016).

3

We have deferred to the appellate division's determination that a payment is "actually made" under OCGA § 34-9-104 (b) when it is mailed to the recipient. *Lane v. Williams Plant Svcs*., 330 Ga. App. 416, 419-420 (1) (a) (766 SE2d 482) (2014) (whole court) ("We need not decide whether the so-called mailbox rule . . . should be applied to the limitation period in OCGA § 34-9-104 (b), because the Appellate Division's determination that a payment is 'actually made' when it is mailed to the recipient is reasonable and entitled to deference.") (footnote omitted). See also *Rawleigh Medical Co. v. Burney*, 25 Ga. App. 20 (a) (102 SE 358) (1920) (the term "mailed" means "the deposit of the letter in a United States post office or United States postal mail box, or in the custody of a United States mail collector"). See generally *United Grocery Outlet v. Bennett*, 292 Ga. App. 363, 364 (665 SE2d 27) (2008) (discussing the evolution of the statute-of-limitation-triggering language in OCGA § 34-9-104 (b)).

a. *Findings of fact.*

It is not disputed that Paguia filed her form requesting a designation that her injury was catastrophic on November 20, 2018. The issue is whether Sunbelt proved that it mailed the last payment of income benefits to Paguia more than two years before that date. *Lane*, 330 Ga. App. at 420 (1) (a).

4

At the hearing before the administrative law judge, Sunbelt presented the testimony of the insurer's workers' compensation claims adjuster assigned to Paguia's claim. The claims adjuster testified that she completed a claims payment authorization form that instructed her administrative assistant to issue a check for Paguia's last two weeks of temporary total disability benefits. She testified that generally, once she completes such a form, she "send[s] it to [her] administrative assistant, and the administrative assistant creates[s] a check in the computer system and a check is printed in [their] office." She added that "the post office comes every day and picks the checks up and they're sent out," sometime between 3:30 and 4:30.

The claims adjuster testified that she is not the person who creates or mails the checks and that she did not know when her administrative assistant created the check to Paguia or when the administrative assistant placed it in the location from which the person from the post office picked it up. But, she testified, her opinion was that the check was mailed on November 15, 2016, the date printed on Paguia's check.

From this evidence, the appellate division found that the insurer's routine practice was for the adjuster to complete a claims payment authorization form, which is conveyed to an administrative assistant who then creates a check in the computer system. It found that the check is printed in the insurer's office and then someone

5

from the post office picks up the check for mailing. The appellate division found that the claims adjuster completed the claims payment authorization form for Paguia on November 14, 2016, a check was printed, and it was picked up for mailing. But the appellate division found that Sunbelt presented no evidence about the time that elapsed between the various steps. Although Sunbelt contended that the check was mailed the day after the adjuster completed the claims payment authorization form, the appellate division found that Sunbelt presented no evidence that a one-day interval between the completion of the form and the mailing of the check is part of the insurer's routine practice; no evidence of the length of time between the administrative assistant's receipt of the claims payment authorization form and the creation of the check in the computer system; and no evidence of the length of time between the creation of the check and the printing of the check. Thus, the appellate division concluded, there was insufficient evidence to determine when the check was mailed, other than some time after November 14, and Sunbelt did not carry its burden of proving its statute-of-limitation defense. See *Hulbert v. Domino's Pizza*, 239 Ga. App. 370, 374 (2) (521 SE2d 43) (1999) (employer has the burden of proof when raising an affirmative defense).

6

Sunbelt argues that the appellate division erred by failing to determine whether another theory was less probable than Sunbelt's theory based on circumstantial evidence that the check was mailed to Paguia on November 15, 2016. So, it argues, the case should be remanded to the appellate division to determine whether there was another more or less probable theory. We disagree.

The crux of Sunbelt's argument is that unless the appellate division explicitly found that other theories are more probable, it was bound to find that the check was mailed on November 15 based on the circumstantial evidence. First, we note that the cases upon which Sunbelt relies in support of its position are procedurally distinguishable. Those cases, *Patterson v. Kevon, LLC*, 304 Ga. 232 (818 SE2d 575) (2018), and *Callaway v. Quinn*, 347 Ga. App. 325 (819 SE2d 493) (2018), concern a plaintiff's burden of pointing to sufficient evidence to create a genuine issue of material fact in order to survive a defendant's summary judgment motion. More importantly, the appellate division did not distinguish between circumstantial and direct evidence in rejecting the statute-of-limitation defense. It simply and correctly analyzed whether Sunbelt presented sufficient evidence to meet its burden of proving its affirmative defense.

Sunbelt argues that the appellate division erroneously required it to introduce evidence of a mailing receipt to prove the date of mailing even though OCGA § 34-9-104 (b) imposes no such requirement. On the contrary, the appellate division did not require Sunbelt to introduce a mailing receipt. It acknowledged that "evidence of an insurance company's routine practice regarding the issuance and mailing of checks can be used to prove how and when a specific check was mailed. . . ." See OCGA § 24-4-406 ("Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with such habit or routine practice."). But it found that Sunbelt failed to meet its burden of proof, given its failure to introduce evidence of the time between each step of its routine practice in creating and mailing payments.

Nor did the appellate division misconstrue the evidence regarding the time between the steps of Sunbelt's routine practice, as Sunbelt claims. Sunbelt presented no testimony whatsoever about when the administrative assistant prints checks after creating them or that a one-day interval between the claims adjuster's completion of

8

the claims payment authorization form and the mailing of the check is part of the insurer's routine practice.

The appellate division's findings are supported by evidence, and we are bound by them. *Bell v. Gilder Timber Co.*, 337 Ga. App. 47 (785 SE2d 682) (2016). The record before us supports the appellate division's finding that Sunbelt failed to prove the statute-of-limitation defense by a preponderance of the evidence.

b. *Rule of Lane v. Williams Plant Svcs*.

Paguia urges us to overrule our holding in *Lane*, 330 Ga. App. at 416[1] that a payment is "actually made" under OCGA § 34-9-104 (b) when it is mailed to the recipient. She argues that we should construe the language in OCGA § 34-9-104 (b) that the statute of limitation begins to run on a claim for a change in condition upon "the date the last payment of income benefits . . . was actually made" to mean that the statute begins to run from the date benefits are suspended as shown on the WC-2, the form the employer must file with the Workers' Compensation Board, instead of the date the payment is mailed as we held in *Lane*.[2] She argues that *Lane*'s interpretation

---

[1] We thank the Georgia Legal Foundation for its amicus brief on this issue.

[2] The amicus brief argues that the statute of limitation should begin to run from the date the final payment of benefits is due.

9

of the statute renders it unconstitutional because that interpretation deprives claimants of notice in violation of the equal protection and due process clauses of the Georgia and United States Constitutions. Georgia Constitution of 1983, Art. I, Sec. I, Par. I & II; United States Constitution, Amend. XIV, Sec. 1. She also argues that *Lane*'s interpretation of the statute grants the employer control over the statute of limitation since the statute of limitation begins to run only when the employer has mailed the last payment of benefits.

Paguia's arguments are worth consideration in a proper case. The record in this case demonstrates that the rule of *Lane* is problematic in practice. There is no way for an employee to ascertain with certainty when a payment was mailed. The purposes of statutes of limitation are ill-served where, as here, the date a limitation period began to run becomes an extensively litigated question of fact. And the rule of *Lane* is subject to manipulation. Here the employer combined the last two weekly payments, shortening the limitation period by a week; and if the appellate division had adopted the employer's contention about the date of mailing, the employee would have missed the statute of limitation by less than a week. Those practical considerations might have led the appellate division to reconsider the determination to which we deferred in *Lane*, but the appellate division is now bound by *Lane*.

10

Nevertheless judicial restraint dictates that we not reconsider *Lane* today. We do not need to revisit *Lane* to decide this case. When "we are able to decide [a] case on a narrower basis, we do not reach the broader issues." *Crenshaw v. Crenshaw*, 267 Ga. 20 (471 SE2d 845) (1996). Declining to overrule a prior decision when unnecessary to decide a case before us is appropriate under the doctrine of judicial restraint. "[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *Moore v. McKinney*, 335 Ga. App. 855, 857 (2) (783 SE2d 373) (2016) (citation and punctuation omitted). "Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available." *Air Courier Conference of America v. American Postal Workers Union*, 498 U. S. 517, 531 (111 SCt 913, 112 LE2d 1125) (1991) (Stevens, J., concurring). Cf. *Van Omen v. Lopresti*, 357 Ga. App. 9, 13 (2) (849 SE2d 758) (2020) (resolving a conflict in the law, although not necessary to the case on appeal, because we had recognized the conflict for more than two decades without resolving it and it had continued to complicate what should have been a straightforward analysis). So we do not address Paguia's challenge to *Lane*. We simply hold that the administrative law

11

judge and the appellate division did not err in finding that Sunbelt failed to meet its burden of proving its statute-of-limitation defense.

The General Assembly, however, is not so restrained. Paguia and the amicus have raised substantial statutory construction arguments. But the difficulties with *Lane* are largely matters of policy. And public policy is the province of the legislature. We respectfully urge the General Assembly to consider this issue.

3. *The record does not show that the administrative law judge relied on impeached testimony in making the award.*

Sunbelt argues that because it is not clear whether the administrative law judge relied on certain impeached testimony of Paguia when analyzing whether her injury is catastrophic, the case should be remanded to the workers' compensation board for reconsideration without reliance on the impeached testimony. We disagree.

Sunbelt argues that Paguia was impeached on the issues of her prior employment and education. Assuming for purposes of appeal that Paguia was impeached on these issues, we are not required to vacate the award because the award demonstrates that the administrative law judge did not rely on Paguia's testimony in determining that her injury is catastrophic.

12

As relevant here, OCGA § 34-9-200.1 (g) (6) (A) defines "catastrophic injury" as an injury "of a nature and severity that prevents the employee from being able to perform his or her prior work and any work available in substantial numbers within the national economy for which such employee is otherwise qualified[.]" The administrative law judge noted that Paguia's "credibility was severely damaged at the hearing," but held that Paguia's injury was catastrophic based on the medical records and the testimony of her vocational expert that there was no work available in substantial numbers within the national economy for which Paguia was otherwise qualified. The evidence presented at the hearing supports this finding.

The vocational expert testified that Paguia's physical limitations "knock[ed] out all jobs," supporting the administrative law judge's finding that Paguia's "combination of limitations precludes all competitive employment." In other words, based on the evidence, the administrative law judge found that Paguia was incapable of performing any competitive employment, regardless of what her prior jobs might have been.

Sunbelt relies on *Pike v. Greyhound Bus Lines*, 140 Ga. App. 863 (232 SE2d 143) (1977), to argue that the administrative law judge could not rely on Paguia's testimony and we should therefore vacate the award. In *Pike*, we *affirmed* the denial

13

of a workers' compensation benefit, holding that the board did not err in finding that an impeached claimant's testimony regarding notice lacked credibility. Id. at 864 (1). This follows from the principle that "the weight and credibility of witness testimony remains solely within the purview of the [administrative law judge] and the Board." *McCrary v. Employees' Retirement System of Ga.*, 349 Ga. App. 466, 470-471 (1) (825 SE2d 896) (2019). And here, the administrative law judge explicitly relied on evidence other than Paguia's testimony to find that her injury is catastrophic.

Because some evidence supports the finding that Paguia's injury is catastrophic, we must affirm.

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps concurs. Rickman, C. J. concurs fully in Divisions 1, 2 (a) and 3, and in the judgment only in Division 2 (b).*