**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 30, 2021**

# In the Court of Appeals of Georgia

A21A1134. DE PAZ v. DE PINEDA.

MCFADDEN, Presiding Judge.

Counsel for plaintiff Enedina Trujillo de Paz made a pre-suit offer to State Farm Mutual Automobile Insurance Company (defendant Ana Alberto de Pineda's insurer) to settle damages arising from a vehicle collision. One of the express requirements for acceptance of the offer was the receipt of payment by the plaintiff's counsel in counsel's office within a specified period of time. There is no dispute that the plaintiff's counsel did not receive the payment within that time period, because the payment was lost during delivery. Nevertheless, the trial court concluded that the parties had reached a settlement agreement and granted the defendant's motion to enforce it.

This ruling was error. As detailed below, the plaintiff was permitted to require, as a term of acceptance of her settlement offer, her counsel's *receipt* of the payment within the specified time period. Because the defendant failed to satisfy that term of acceptance, no settlement agreement was formed. So there is no settlement agreement that can be enforced and the trial court's ruling must be reversed.

1. *Facts and procedural background.*

The defendant in this case, as the party asserting the existence of a settlement agreement, has the burden of proving that an agreement was formed. See *Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012) ("the party asserting the existence of a contract has the burden of proving its existence and terms"). On appeal, we review a ruling on a motion to enforce a settlement agreement de novo, viewing the evidence of record in the light most favorable to the nonmoving party. *Allen v. Sea Gardens Seafood*, 290 Ga. 715, 717 (2) (723 SE2d 669) (2012); *Yim v. Carr*, 349 Ga. App. 892, 900 (2) (827 SE2d 685) (2019).

The record in this case shows that the plaintiff sought damages for harm arising from a 2017 vehicle collision. Before filing an action, her counsel sent State Farm a time-limited settlement offer. Our analysis is directed by the version of OCGA § 9-11-67.1 in effect in 2018, the time period relevant to this case, "which governs pre-

2

suit offers in suits involving tort claims arising from the use of a motor vehicle[.]" *Yim*, supra at 904 (2) (citation and punctuation omitted). (In an amendment effective July 1, 2021, our General Assembly significantly revised some of the provisions of OCGA § 9-11-67.1, including OCGA § 9-11-67.1 (b) (1) and OCGA § 9-11-67.1 (g), two subsections at issue in this case. Except where noted, all references to OCGA § 9-11-67.1 in this opinion concern the version of that Code section in effect in 2018.)

Pertinently, the offer required that a payment of $25,000 (the policy limits) be "received in [the plaintiff's counsel's] office within 10 days after your written acceptance of this offer to settle," and stated that "[t]imely payment is an essential element and condition of acceptance by either party."

On behalf of the defendant, State Farm made a written acceptance of the offer on July 6, 2018, and arranged for a $25,000 draft to be picked up by United Parcel Service (UPS) and sent to the plaintiff's counsel via overnight delivery. UPS apparently lost that draft, and the plaintiff's counsel did not receive a replacement draft in his office until July 30, 2018, more than ten days after State Farm's written acceptance.

After the plaintiff took the position that the parties had not reached a settlement agreement, the defendant filed a motion to enforce a settlement agreement, arguing

3

that she accepted the settlement offer when she gave the payment to UPS for delivery. The trial court agreed and held that the parties had created an enforceable settlement agreement, concluding that the defendant's counsel "did not commit an error and did everything possible to comply with the terms of the agreement" when he sent the payment by overnight delivery via UPS.

The plaintiff filed a notice of appeal from that order, but then withdrew her appeal on the ground that the order was not a final judgment. See *Thomas v. Sheppard*, 349 Ga. App. 871 (827 SE2d 60) (2019) (an order granting a motion to enforce a settlement agreement "is not final until the trial court expressly enters final judgment on that order") (citation and punctuation omitted). Subsequently, the plaintiff filed a motion asking the trial court to reconsider her decision to enforce the purported settlement agreement. On November 6, 2020, the trial court issued another order, which made the initial order the final judgment of the trial court and denied the plaintiff's motion for reconsideration. The plaintiff now appeals from the November 6, 2020 order.

2. *Analysis.*

As our Supreme Court has explained, the version of OCGA § 9-11-67.1 in effect at the time the plaintiff made her settlement offer in this case was

[en]acted against the backdrop of a large body of law on contract formation generally and settlement formation specifically. As part of that existing law, settlement agreements must meet the same requirements of formation and enforceability as other contracts. There is no enforceable settlement between the parties absent mutual agreement between them.

*Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (a) (797 SE2d 814) (2017) (citations and punctuation omitted). That existing law includes the "fundamental principle . . . that an offeror is the master of his or her offer and free to set the terms thereof." Id. at 853 (2) (a) (citations and punctuation omitted).

An offeror may include terms of acceptance establishing a "'unilateral contract,' whereby an offer calls for acceptance by an act rather than by communication[.]" *Grange Mut. Cas. Co.*, 300 Ga. at 853 (2) (a). If an offer "calls for an act, it can be accepted *only* by the doing of the act." *Duenas v. Cook*, 347 Ga. App. 436, 440 (818 SE2d 629) (2018) (citation and punctuation omitted; emphasis supplied). Accord *Barnes v. Martin-Price*, 353 Ga. App. 621, 624 (1) (838 SE2d 916) (2020); *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). If the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds. See *Grange Mut. Cas. Co.*, supra at

5

856 (2) (b); *Jervis v. Amos*, 358 Ga. App. 589, 594 (1) (854 SE2d 387) (2021). "An acceptance must comply with the requirements of the offer as to the . . . performance to be rendered. . . . [A]n offeree's failure to comply with the *precise* terms of an offer is generally fatal to the formation of a valid contract[.]" *Atkinson v. Cook*, 271 Ga. 57, 58 (518 SE2d 413) (1999) (citation and punctuation omitted; emphasis supplied). If a defendant fails to deliver payment in the manner specified in the offer, then the defendant did not accept the offer. See *Benton v. Gailey*, 334 Ga. App. 548, 551 (2) (779 SE2d 749) (2015).

In this case, the plaintiff's offer called for an act as a term of acceptance — the defendant's timely payment, which the offer defined as payment received in the plaintiff's counsel's office within a specified time period. The parties agree that the payment was not received in the plaintiff's counsel's office within that time period. So it is undisputed that the defendant did not comply with one of the precise terms of acceptance of the settlement offer.

(a) *The defendant's arguments that she accepted the settlement offer even though she did not comply with its precise terms lack merit.*

The defendant argues that a settlement agreement was formed even though she did not comply with the precise terms of the plaintiff's offer. She makes two basic

arguments: (1) that State Farm's act of giving the payment to UPS for overnight delivery nevertheless satisfied the terms of the offer and constituted acceptance; and (2) that OCGA § 9-11-67.1, the Code section governing pre-suit offers to settle tort actions arising from the use of a motor vehicle, precluded the precise term of the offer requiring receipt of payment within the specified time frame. Neither argument has merit.

(i) *The act of giving the payment to UPS did not comply with the terms of the offer.*

The defendant argues that State Farm, on her behalf, performed the act necessary to accept the offer by giving the payment to UPS for overnight delivery. In support of this argument she cites to code provisions and legal principles that do not apply to the particular facts of this case.

The defendant cites to the "mailbox rule" set forth in OCGA § 13-3-3, which provides that "[i]f an offer is made by letter, an acceptance by written reply takes effect from the time it is sent and not from the time it is received[.]" But the offer in this case did not merely require an acceptance by written reply. The offer also plainly and unambiguously required the doing of an act in addition to a written reply. See generally *Herring*, 213 Ga. App. 699 (distinguishing between the acceptance of an

7

offer "by a promise to do the thing contemplated therein, or by the actual doing of the thing") (citation and punctuation omitted). Under these circumstances, the rule set forth in OCGA § 13-3-3 does not apply. See *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 609 (2) n. 10 (798 SE2d 257) (2017). See generally Rest. 2d of Contracts § 63 (applying "mailbox rule" to determine the time when an acceptance takes effect, "*[u]nless the offer provides otherwise*") (emphasis supplied).

The defendant also cites to OCGA § 13-4-26, which provides that "[i]f the promise of a party is to deliver on demand, the demand must be reasonable as to time, place, and manner[.]" She argues that the requirement that the payment be received in plaintiff's counsel's office within the specified time period was unreasonable. But OCGA § 13-4-26 concerns performance of an obligation in an already formed contract, not the formation of a contract in the first instance.

Similarly, the defendant's argument that she substantially complied with the term of acceptance requiring receipt of payment is unavailing. Substantial compliance is a concept that concerns performance of a contractual obligation, and until a contract is formed there is no obligation with which a party must comply. As noted above, when an act is required to accept an offer, that precise act must be performed

or there is no meeting of the minds and no formation of a contract. See *Atkinson*, 271 Ga. at 58; *Jervis*, 358 Ga. App. at 595 (1).

(ii) *OCGA § 9-11-67.1 did not prohibit the term of acceptance requiring receipt of payment.*

The defendant argues that the plain language of OCGA § 9-11-67.1 prohibited the plaintiff from requiring, as a term of acceptance of her settlement offer, receipt of payment within the specified time period. As a general matter, a party making a pre-suit offer under OCGA § 9-11-67.1 may require terms in addition to those specifically set forth in that Code section, including terms calling for the acceptance by an act. *Grange Mut. Cas. Co.*, 300 Ga. at 854-855 (2) (b). But see OCGA § 9-11-67.1 (b) (1) (2021) (current version of the statute, which now provides that an offer under the Code section may *not* require terms in addition to those specifically set forth in the statute "[u]nless otherwise agreed by both the offeror and the recipients in writing"). An offeror "may ask the recipient of [the o]ffer to do something to accept the offer beyond stating the recipient's acceptance in writing." Id. at 855 (2) (b).

The defendant, however, argues that OCGA § 9-11-67.1 (g) bars the specific term of acceptance in this case. Even if the plaintiff's offer was inconsistent with the requirements of OCGA § 9-11-67.1 (g), "it does not follow that [the defendant] could

9

accept something other than the offer made by [the plaintiff]." *Kitchens v. Ezell*, 315 Ga. App. 444, 450-451 (1) (b) (726 SE2d 461) (2012) (physical precedent only). "It is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties." *Arrow Exterminators v. Gates Condo. Homeowners Assn.*, 294 Ga. App. 620, 622 (1) (669 SE2d 421) (2008) (citation omitted).

But we do *not* construe OCGA § 9-11-67.1 (g) to prohibit the receipt-of-payment term in the plaintiff's offer. That Code section states: "Nothing in this Code section shall prohibit a party making an offer to settle from requiring payment within a specified period; provided, however, that such period shall not be less than ten days after the written acceptance of the offer to settle." OCGA § 9-11-67.1 (g). Compare OCGA § 9-11-67.1 (g) (2021) (current version of the statute, which now provides that the period for requiring payment "shall not be less than 40 days from the receipt of the offer"). The defendant asserts that the word "payment" in this provision means only the act of sending a payment, not the act of receiving a payment. So, according to the defendant, OCGA § 9-11-67.1 (g) provides that an offeror can only require that payment be mailed within ten days after the written acceptance, not that it be received within that time period.

10

We do not agree that the term "payment," as used in OCGA § 9-11-67.1 (g), excludes "receipt of payment." In construing the statute, "we must presume that the General Assembly meant what it said and said what it meant[,] afford[ing] the statutory text its plain and ordinary meaning[.]" *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). The ordinary meaning of the word "payment" encompasses both the act of paying and the item that is paid. See, e. g., Black's Law Dictionary Online (2d ed.) (defining "payment" as "The performance of a duty, promise, or obligation, or discharge of a debt or liability, by the delivery of money or other value. Also the money or other thing so delivered."); Webster's New International Dictionary (2d ed. unabridged) (defining "payment" as both the "[a]ct of paying, or giving compensation; the discharge of a debt or an obligation" and "[t]hat which is paid; the thing given to discharge a debt or an obligation, or in fulfillment of a promise"). It is consistent with these definitions to construe OCGA § 9-11-67.1 (g) to permit an offeror to require the item which is paid to be received within ten days of the written acceptance of the offer.

Although the defendant cites a decision in a workers' compensation case for the proposition that the term "payment" in a statute can be construed to mean the date that the payment is mailed, that decision makes it clear that the word "payment" can

11

also reasonably be construed to mean the date a mailed payment is received. *Lane v. Williams Plant Svcs.*, 330 Ga. App. 416, 419-420 (1) (a), (b) (766 SE2d 482) (2014). Our ruling in the workers' compensation case ultimately turned on the deference we gave to an agency interpretation of the statute in question, id., a factor not present here.

Finally, it is true, as the defendant argues, that "[t]he judiciary has the duty to reject the construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature." *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004). The defendant, however, has not convinced us that such a circumstance exists here that would require us to construe OCGA § 9-11-67.1 (g) to forbid an offeror from requiring receipt of payment within ten days of the written acceptance as a term of acceptance of the offer. The defendant describes the receipt-of-payment requirement as unreasonable, absurd, and oppressive due to the payor's lack of complete control over whether or not the payee actually receives the funds. But our law recognizes receipt requirements in other contexts, such as court filings, and as a general matter, absent a "mailbox rule," a party choosing to use the mail or a similar delivery service "assumes all the risks usually incident to the business of mail delivery, if the material is not timely received." *Reese v. City of*

12

*Atlanta*, 247 Ga. App. 701 (545 SE2d 96) (2001) (involving the filing of a complaint). See *Griffith v. Mitchell*, 117 Ga. 476, 478-480 (43 SE 742) (1903) (finding no grounds for reinstating case that was dismissed after party missed deadline for filing briefs because the "selected messenger of counsel failed, for some reason, to deliver the package in due time," noting that "it is well settled that counsel takes the risks of the mails" and that "[i]t was the duty of counsel to have had their briefs in the hands of the clerk [of court]," notwithstanding the messenger's failure).

(b) *We are not persuaded by arguments made by the amicus curiae.*

In a brief filed as amicus curiae, the Georgia Defense Lawyers Association argues that the trial court properly granted the motion to enforce a settlement agreement because the defendant's insurance company, State Farm, "did everything within its power to meet [the timely-payment] condition." We thank the amicus curiae for its brief on this issue, but we are not persuaded.

The record does not support a finding that State Farm did "everything within its power" to meet the condition that the payment be received by the plaintiff's counsel within the specified time frame. The record only shows that State Farm arranged for overnight delivery of the payment through UPS; the record is silent as

13

to the feasibility of any other actions State Farm could have taken to ensure the payment's timely receipt.

It is true, as the amicus curiae asserts, that the record contains no evidence that State Farm was in any way at fault for the failure of UPS to deliver the payment. But it remains undisputed that State Farm, regardless of its good faith or intentions, did not do an act necessary to accept the plaintiff's offer on behalf of the defendant. As a result, there was no meeting of the minds and no formation of a settlement agreement. See *Grange Mut. Cas. Co.*, 300 Ga. at 856 (2) (b); *Jervis*, 358 Ga. App. at 594 (1); *Duenas*, 347 Ga. App. at 440.

The amicus curiae invites us to find that a receipt-of-payment term in a settlement offer violates the public policy of our state encouraging settlement. But as our Supreme Court has acknowledged and as we discussed above, the offeror's ability to set the terms of his or her offer is a fundamental principle of Georgia contract law. See *Grange Mut. Cas. Co.*, 300 Ga. at 853 (2) (a). "[T]he freedom to contract should not be curtailed on public policy grounds unless the case is free from doubt." *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 317 (232 SE2d 910) (1977). We do not view the general public policy favoring settlement to restrict the offeror's freedom to set the terms of the offer, even if those terms impose an

14

additional burden upon the offeree. Cf. *State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988) ("Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract.").

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps concurs. Rickman, C. J., concurs in the judgment only.*